**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **No. 25-CR-179 (JEB)** |
| | ) | |
| **RONALD AIKEN** | ) | |
| | ) | |

**MOTION TO DISMISS INDICTMENT**

Mr. Ronald Aiken, through counsel, respectfully moves to dismiss the Indictment, which charges Mr. Aiken with a single count of possessing a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Section 922(g)(1) is unconstitutional because it violates the Second Amendment, both facially and as applied to Mr. Aiken, and also because it exceeds Congress's power under the Commerce Clause, both facially and as applied.

## I. Introduction

Federal law prohibits Mr. Aiken from possessing a firearm or ammunition because he has a prior conviction for a crime "punishable by imprisonment for a term exceeding one year," that is, a felony. 18 U.S.C. § 922(g)(1). That prohibition violates the Second Amendment on its face and as applied to Mr. Aiken.

Under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), *United States v. Rahimi*, 602 U.S. 680 (2024), and *United States v. Hemani*, 608 U.S. 772 (2026), a firearm regulation survives Second Amendment scrutiny only if the government proves it is "consistent with the Nation's historical tradition of firearm

regulation." *Bruen*, 597 U.S. at 24. Felon disarmament under § 922(g)(1) cannot make that showing and this motion preserves that facial challenge.

As applied to Mr. Aiken, the government cannot show a historical tradition of prohibiting firearms based on non-violent predicate convictions requiring no proof of dangerousness. Section 922(g)(1) is therefore unconstitutional as applied to Mr. Aiken.

Separately, § 922(g)(1) exceeds Congress's power under the Commerce Clause. Under *United States v. Lopez*, 514 U.S. 549 (1995), and *United States v. Morrison*, 529 U.S. 598 (2000), mere possession of a firearm is not economic activity Congress may regulate through the Commerce Clause, and a bare allegation that a firearm once crossed a state line does not supply the missing constitutional authority. Justice Thomas developed this point at length in his concurrence in *Hemani*, 608 U.S. at 795-802 (Thomas, J., concurring) (2026).

## II. Background

The indictment in this case alleges that on June 10, 2025, Mr. Aiken, knowing he had previously been convicted of a felony "in Washington, D.C. Superior Court case numbers 2003-FEL-002112, 2008-CF2-025944, and 2022-CF2-001519; and Arlington County, Virginia Circuit Court case number CR21000183-00" possessed a firearm and ammunition that "had been possessed, shipped and transported in and affecting interstate and foreign commerce," in violation of 18 U.S.C. § 922(g)(1).

In Superior Court case 2003-FEL-002112, Mr. Aiken was convicted of attempted robbery and sentenced to a suspected two-year term of incarceration and

two years of probation. In Superior Court case 2008-CF2-025944, Mr. Aiken was convicted of attempted burglary and assault with a dangerous weapon (bat) and sentenced to 48 months incarceration and three years of supervised release. In Superior Court case 2022-CF2-001519, Mr. Aiken was convicted of unlawful possession of liquid PCP and sentenced to 18 months incarceration with 11 months suspended and three years of supervised release. In Arlington County, Virginia Circuit Court case number CR21000183-00, Mr. Aiken was convicted of possession of a schedule I or II drug and possession of a firearm by a violent felon and sentenced to a five-year term of imprisonment with three years and six months suspended and a term of supervised probation. Mr. Aiken concedes that, like the defendant in *United States v. Richardson*, 188 F.4th 412 (D.C. Cir. 2026), he was on supervised probation for a predicate felony.

## III. Section 922(g)(1) Violates the Second Amendment, Facially and As Applied to Mr. Aiken.

### A. Section 922(g)(1) Is Facially Unconstitutional.

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. Courts apply a two-step framework set out in *Bruen* to determine whether a particular firearm regulation is constitutional. ***First,*** a court must ask "whether the Second Amendment's plain text covers an individual's conduct," and if so, "the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24, 32. ***Second***, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 24. That inquiry "focuses on the principles that underpin our regulatory tradition," and

"will often involve reasoning by analogy" to "well-established" historical laws that are "relevantly similar" to the modern regulation. *Rahimi*, 602 U.S. at 692; *Bruen*, 597 U.S. at 28-30. Two features are "central" to the comparison: "why" the historical regulation was in place and the "how" it was historically enforced. *Hemani*, 608 U.S. at 780 (citing *Bruen*, 597 U.S. at 29; *Rahimi*, 602 U.S. at 692). "The more closely a contemporary law mirrors a well-established historical analogue in purpose and operation, the more likely it is to be upheld," and "the more a modern law diverges from traditional laws in purpose and operation, the less likely it is to survive review." *Id.* at 780-81. The government bears the burden to prove the validity of a Second Amendment restriction throughout. *Bruen*, 597 U.S. at 24.

The D.C. Circuit recently applied the *Bruen* framework in *Richardson* to hold that § 922(g) is constitutional "as applied to felons who are still under supervision as part of a criminal sentence at the time of their 922(g)(1) offense," based on a Founding-era tradition of temporarily disarming felons while they served forfeiture-based sentences. *Richardson*, 188 F.4th at 414, 419. The panel was careful to note the limits of its holding, expressly declining to "address the constitutionality of section 922(g)(1) as applied to … other felons" who have "finished serving their sentences," or to "even address whether Richardson, after serving his various criminal sentences, may have a viable Second Amendment claim against the continued application of section 922(g)(1) at that juncture." *Id.* 419-20. Because the Court found § 922(g)(1) constitutional as applied to defendants who remained under non-custodial

supervision for their predicate felony, it found § 922(g)(1) was not facially unconstitutional. *Id*. at 423. *Richardson* was wrongly decided.

Applying *Bruen's* framework facially here, at step one, the Second Amendment's text does not exclude people convicted of crimes punishable by more than year, *i.e.*, felons, from "the people" it protects. "The people" is a term of art used consistently throughout the Bill of Rights, and "convicted felons fall within 'the people' as contemplated by the First and Fourth Amendments." *United States v. Carrero*, 635 F. Supp. 3d 1210, 1212 (D. Utah 2022). There is "no reason to adopt an inconsistent reading of 'the people'" in the Second Amendment alone. *Range v. Att'y Gen.*, 69 F.4th 96, 102 (3d Cir. 2023) (en banc), *vacated on other grounds*, 144 S. Ct. 2706 (2024). And in *Rahimi*, the Supreme Court squarely rejected the government's attempt to limit the Amendment's coverage to "responsible" citizens, explaining that such a line does not "derive from our case law." 602 U.S. at 701-02; *see also id.* at 773 (Thomas, J., dissenting) ("The Government's claim that the Court already held the Second Amendment protects only 'law-abiding, responsible citizens' is specious at best."); *id.* at 774 (explaining that the government's theory that the Second Amendment protects only "responsible" and "law-abiding" citizens "is the Government's own creation, designed to justify every one of its existing regulations" and "has no doctrinal or constitutional mooring."). Felons thus fall into the category of "people" protected by the Second Amendment and the government must establish a historical tradition of disarming them that applies to Mr. Aiken.

At step two, the government cannot carry its burden to show a Founding-era tradition of categorically disarming all felons. The government has itself represented that "18 U.S.C. § 922(g)(1) is firmly rooted in the twentieth century and likely bears little resemblance to laws in effect at the time the Second Amendment was ratified." Govt. Br. in *United States v. Pettengill*, No. 10-2024, 2011 WL 1977759, at *27-28 (1st Cir. May 13, 2011). Section 922(g)(1) traces to the Federal Firearms Act of 1938, which disarmed only those convicted of enumerated "crime[s] of violence" and Congress did not extend the ban to all felons until 1961. *See* Pub. L. No. 87-342, 75 Stat. 757 (1961); *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc). A regulation "firmly rooted in the twentieth century" cannot satisfy *Bruen's* demand for a tradition traceable to 1791. *Bruen*, 597 U.S. at 2136-37, 2154 n.28.

*Richardson* did not resolve this facial question. The panel expressly "decline[d] to engage with the broadest arguments pressed by both sides," assumed without deciding that § 922(g)(1) restricts conduct covered by the Second Amendment's text, and rested its holding on the "narrow ground" that "felons still serving their criminal sentences" may be temporarily disarmed. *Richardson*, 188 F.4th at 417. The panel further recognized that "[o]ur sister circuits are deeply divided … on whether lifetime felon disarmament is constitutional absent some individualized inquiry into whether the individual felon is dangerous," comparing *Zherka v. Bondi*, 140 F.4th 68, 74-75 (2d Cir. 2025), and *United States v. Dubois*, 139 F.4th 887, 888-89 (11th Cir. 2025), with *Range*, 124 F.4th 218, 225 (3d Cir. 2024) (en banc), and *United States v.*

*Williams*, 113 F.4th 637, 645-48 (6th Cir. 2024). *Richardson*, 188 F.4th at 417. Mr. Aiken asserts that lifetime disarmament is facially unconstitutional.

**B. Section 922(g)(1) is Unconstitutional As Applied to Mr. Aiken.**

The government also cannot show that § 922(g)(1)—or more specifically, disarming felons with criminal histories like Mr. Aiken's—is consistent with the Nation's historical tradition of firearm regulation.

Some courts have used the concept of "dangerousness" to adjudicate as-applied § 922(g)(1) challenges, holding the statute can be constitutionally applied only to someone whose prior felony convictions indicate he is "dangerous." *See, e.g., United States v. Williams*, 113 F.4th 637, 650-63 (6th Cir. 2024); *United States v. Kimble*, 142 F.4th 308, 314-18 (5th Cir. 2025). Even assuming "dangerousness" is an appropriate metric for deciding a § 922(g)(1) challenge—which Mr. Aiken does not concede—that test does not establish that the statute is constitutional in Mr. Aiken's case.

Under a "dangerousness" standard, the government must show a historical tradition of disarmament and that disarming Mr. Aiken under § 922(g)(1) is consistent with that historical tradition. The government cannot meet that burden. There is no historical tradition or principle that supports permanently disarming people based on similar felony convictions.

Additoinally, should the government argue Mr. Aiken's prior convictions for attempted robbery and assault with a deadly weapon place him in the category of "dangerousness," Mr. Aiken served his entire incarceration sentences for those

offenses and successfully completed his terms of supervised release. There is no historical tradition of permanently disarming individuals convicted of felonies.

There is no historical tradition or principle that supports disarming people based on similar facts. Absent such a showing, § 922(g)(1) is unconstitutional as applied to Mr. Aiken.

**C. Mr. Aiken's Predicate Court Supervision is Irrelevant.**

Mr. Aiken acknowledges that his Second Amendment challenge to § 922(g)(1) is foreclosed by *Richardson* because he was on supervised probation for a predicate offense at the time of his underlying conduct. He nonetheless seeks to preserve his Second Amendment challenge. *Richardson* was wrongly decided because a felon's supervision status has nothing to do with his disarmament under § 922(g)(1).

Rather than answer the squarely-presented question of whether § 922(g)(1)'s felon-in-possession prohibition was unconstitutional as applied to a felon with a non-violent predicate, *Richardson* answered an inapposite question of whether the government may disarm an individual while he is "under supervision as part of a criminal sentence." But an as-applied challenge to a firearm statute is just that—a challenge to the application of that statute, not some other hypothetical statute. *See Williams v. Illinois*, 399 U.S. 235, 238-39 (1970) (rejecting argument that "statute is not constitutionally infirm simply because the legislature could have achieved the same result by some other means"). When assessing a statute's constitutionally, courts may "consider[] only applications of the statute in which it actually authorizes or prohibits conduct." *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015).

Section 922(g)(1) prohibits only firearm possession by a person with a prior *conviction*—it says nothing about the person's prior sentence and nothing about supervision. Thus, whether Mr. Aiken could be disarmed while on court supervision is not at issue here—rather, the question is whether he can be disarmed by § 922(g)(1) based on his status as a felon. Because there is no historical tradition of disarming felons, particularly those with criminal history like Mr. Aiken's, the indictment in this case is unconstitutional.

**IV. Section 922(g)(1) Is Unconstitutional Because It Exceeds Congress's Power Under the Commerce Clause.**

Section 922(g)(1) exceeds Congress's power under the Commerce Clause because it criminalizes the mere intrastate possession of a firearm based solely on the fact that the firearm "traveled in interstate commerce" at some point in the past, without regard to economic activity. Count One of the indictment in this case alleges that the firearm Mr. Aiken possessed was previously shipped or transported in interstate commerce, but no date for or circumstances of this previous shipment/transport is alleged and there is no allegation explaining its substantial effect on interstate commerce. No such effect exists in this case.

Under controlling Supreme Court cases *Lopez* and *Morrison*, and Justice Thomas's concurrence in *Hemani*, a showing that a firearm or ammunition *previously* travelled in interstate commerce is not a constitutionally sufficient basis for federal regulation of local firearm possession. Indeed, intrastate possession of a firearm is not economic activity that substantially affects interstate commerce. As a result, the Commerce Clause is not a constitutional basis of authority for federal regulation of

Mr. Aiken's alleged firearm possession here. *See Hemani*, 608 U.S. at 798 (Thomas, J., concurring) ("[T]he mere possession of a firearm that long ago crossed state lines is not 'economic activity' in any sense."); *id*. at 799-802 (explaining that § 922(g)'s "in or affecting commerce" element, as construed in *Scarborough v. United States*, 431 U.S. 563 (1977), and applied by the courts of appeals, "appears to exceed Congress's enumerated power to regulate interstate commerce," and collecting circuit authority questioning the statute's constitutionality) (citing *United States v. Lopez*, 514 U.S. 549 (1995); *United States v. Morrison*, 529 U.S. 598 (2000); *Alderman v. United States*, 562 U.S. 1163 (2011) (Thomas, J., dissenting from denial of certiorari)). In the absence of other authority, the indictment therefore must be dismissed as unconstitutional.

*Scarborough v. United States*, 431 U.S. 563 (1977), does not supply the missing constitutional authority. *Scarborough* held only that, as a matter of statutory interpretation, "proof that the possessed firearm previously traveled in interstate commerce is sufficient to satisfy the *statutorily required* nexus" in a predecessor version of § 922(g). *Id.* at 564 (emphasis added). It said nothing about the Constitution. "No party alleged that the statute exceeded Congress' authority, and the Court did not hold that the statute was constitutional." *Alderman*, 562 U.S. at 1167 (Thomas, J., dissenting from denial of certiorari). *See also Hemani*, 608 U.S. at 800 (Thomas, J., concurring) ("*Scarborough*'s holding 'was statutory, not constitutional.'") (quoting *United States v. Seekins*, 52 F.4th 988, 991 (5th Cir. 2022) (Ho, J., dissenting from denial of rehearing en banc)); *accord Bonner*, 159 F.4th at

342 (Willett, J., concurring). As a result, *Scarborough* and the cases that rely upon it simply do not establish that the Commerce Clause provides constitutional authority for prohibiting gun possession under § 922(g)(1).

Although *Fraternal Order of Police v. United States*, 173 F.3d 898, 907-08 (D.C. Cir. 1999), rejected a similar challenge based on § 922(g)(9)'s "jurisdictional element," that decision rests on a flawed inference from *United States v. Bass*, 404 U.S. 336 (1971), and reiterated in *Scarborough v. United States*, 431 U.S. 563 (1977), which a growing body of authority now calls into doubt. *See Alderman,* 562 U.S. at 1168 (Thomas, J., dissenting from the denial writ of certiorari) ("If the *Lopez* framework is to have any ongoing vitality, it is up to this Court to prevent it from being undermined by a 1977 precedent [*Scarborough*] that does not squarely address the constitutional issue."); *United States v. Squire*, 182 F.4th 481, 482 (5th Cir. 2026) (granting petition for rehearing en banc in case challenging Fifth Circuit precedent relying on *Scarborough* as basis for § 922(g)(1) Commerce Clause authority). And even accepting *Fraternal Order of Police*'s framework on its own terms, the indictment's bare, conclusory jurisdictional allegation does not satisfy the "case-by-case inquiry" that *Lopez* and *Fraternal Order of Police* both require.

## VI. Conclusion

For the foregoing reasons, Mr. Aiken respectfully asks this Court to dismiss Count One of the Indictment charging a violation of 18 U.S.C. § 922(g)(1) as unconstitutional under the Second Amendment, both facially and as applied to him,

and because it independently exceeds Congress's power under the Commerce Clause, both facially and as applied.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

____________/s/______________
Benjamin Schiffelbein
Diane Shrewsbury
Assistant Federal Public Defenders
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500